May it please the court, my name is Dan Siegel and I represent the appellant Colin Cole. With the permission of the court I request three minutes for rebuttal. That's frantic. There are three reasons why this case should be remanded with instructions to remove the First, the supervised release statute doesn't authorize the creation of tolling rules. Second, Congress anticipated that supervised release sentences would be served in foreign countries. And third, we've met the plain error standard as applied in three Third Circuit supervised release cases. Turning to the first point, we recognize that district court judges had broad discretion to create special conditions of supervised release. But tolling isn't a condition. Tolling is the stopwatch that tells you when the conditions begin and end. So we agree with the Enbank Sixth Circuit, which agreed unanimously that while courts have... You've got a pretty good story here. You've got four circuits lined up behind you. Yes. This is an unusual case for the defense and every now and then they get one of these. When the coin flip goes your way, you just go, we will receive. Okay. So the case law is with us on that, on the reading of the statute that it doesn't create the authority to toll. But let's look at what Congress anticipated. I think if you read the statute, Congress anticipated that supervised release really would be served in foreign countries. And there's a clause of the statute that I'd like to read to you on that point. It's 18 U.S.C. section 3583D. It's in the last paragraph and it says, I'm just going to quote a clause, if an alien defendant is subject to deportation, the court may provide as a condition of supervised release that he be deported and remain outside the United States. So what this contemplates is that the person is going to be released from prison, that while he is on supervised release as a condition of that supervised release will continue in the foreign country with the condition that he remain outside the United States. So there's a... The government's assertion is that that doesn't mean that the court couldn't fashion something that would provide a real incentive for somebody not to In other words, I understand their argument to be that by saying one thing, Congress didn't mean to limit or exclude courts from making sensible judgments about what will provide a sound incentive for deported aliens that cannot break the law again. Why is that an unwise or a legally unsound argument? Well, as a policy matter, and one of the things you touched on is policy, it's possible, for example, that a person who is deported, in this case, Mr. Cole has a particularly bad background, but a person in another case, for example, might get a ruling from the Immigration Services saying that you're allowed to come back to the United States. What happens if he has this hanging over his head, saying whenever you reenter the United States, it's a violation of the terms of supervised release, even if another agency of the federal government has said otherwise. That's one potential. Well, of course, that assumes that a judge would apply the condition that was applied here in all cases, but why would we assume that a court will do that instead of assuming that a court will make a targeted decision about that and say, you know what, you're the sort of person that comes back when we don't want you to come back, and we're going to make it a real problem for you if you come back by saying you come back, you face a supervised release violation. I can understand why a judge would have a reason to want to say that, but on the other hand, judges are also constrained by what they're authorized to do under the statute. There are a few clues in the statute that say you probably can't do that. Number one, this is a tolling provision, and the statute, at least as interpreted by the other circuits, says you don't have the authority to create tolling rules. It's another part of the statute that says supervised release begins when you get out of jail. This seems to be contrary to that. There's another part of the statute that talks about supervised release running in foreign countries. Look, he's looking at a maximum of 20 years if he comes back to the United States another time. That's something to hang over his head as well, but the narrow question of this case is whether, as a general rule, the district court judges can impose this kind of a standard, and I'd submit that under the law they can't. The real question, I think, is plain error, and I'd just like to turn to that for a moment. Actually, could you work backwards on plain error? Let's assume that there is an error. Let's assume it's plain. Let's assume it affects substantial rights, but how does this really affect the fairness, integrity, or public reputation of judicial proceedings? It affects the public reputation for the potential to waste judicial resources. Let's assume that 20 years from now, Mr. Cole shows up in Florida and he gets arrested. What happens after he gets arrested and somebody looks at the computer and sees that there's a supervised release violation for him coming back to the United States? First, the prison department has to transport him from Florida to Pennsylvania, from Florida to Delaware. Second, when he gets to Delaware, the court has to appoint and pay an attorney. Third, the attorney has to get the records out from storage from a case from 20 years ago. Fourth, the attorney has to figure out what the law was from 20 years ago. Why is that so bad? We want to supervise these people. Isn't it farcical if you have five years of supervised release and the person leaves after 10 days and they're gone for six years and they're off doing crazy things in a foreign country and then they come back? They've had no supervision. I understand your point. But that would seem to affect substantial rights and reputation judicial proceedings more than having to then supervise someone who hasn't been supervised. But then we get back to the point that Judge Ambrose was making. Let's assume that we're right on the law and that we're right that it affects his substantial rights. What happens when he gets to the judge 20 years from now and they say, Judge, you can't enforce this because there are all these opinions that say that this is an illegal condition. The only reason that the defendant didn't get it back in 2009 was because he didn't meet the last element of the plain error test. The response is going to be, well, no, OK, I'm sorry. We wasted the taxpayer's money transporting him up from Florida, appointing an attorney, having the hearing. But now I don't have jurisdiction to find him in violation of supervised release because now he's saying that the law doesn't permit me to do it. So what I'm submitting to you is that when you talk about the reputation of the courts, which is the final element, the reputation will be better. Judicial efficiency will be better served if you deal with the issue now rather than waiting for it to be untangled in the event that Mr. Cole comes back in 5, 10, or 20 years. Although someone could totally evade supervised release, not being in the country, have it evaded, and that could impact the reputation, could it not? Evading supervised release? Well, in the sense that we're not supervising all, I mean, doesn't the proposal that, and it's more than a proposal, I mean, as Judge Amber says, you've got a few circuit courts behind you. But isn't the position that you're urging really mean that laying a supervised release term on somebody is a meaningless act if they're going to be deported? Oh, no, not at all. If they're going to be deported for six years and the time is running? If they come back to the United States during that six years, that's a violation of the terms of supervised release. So, no, any, you touch the United States during the six years and you're in big trouble. But, you know, there has to be some, you have to comply with the terms of the statute. Even though the judge, look, we can see that the judge had good intentions. The judge wanted to properly control the activities of this person who had a bad record. But there are ways that the statute permits you to do it, and there are ways that are beyond the statute. And everybody seems to agree in the other circuits, and they've done so unanimously in these opinions, including the 13 judges on the Sixth Circuit, that this goes beyond the scope of the statute. The Third Circuit has ruled that when you go beyond the scope of the statute, that triggers the ability to grant relief under the plain error standard. And three defendants have got it where the supervised release provision went beyond the terms of the statute. So that's what we're asking. Is it plain error under the other cases? Yeah. Each of the three cases that I cited was a plain error case where the court found that a condition of supervised release went beyond the terms of the statute. Because it went beyond the terms of the statute and because the defendant faced the possibility of going to jail because of it for a violation, they found it met the harmless error test. So we're asking for a limited remand just to remove that foreign tolling provision. Thank you. Your Honors, good morning. Christopher Burke for the United States. And Judge Ambrose, I guess to your analogy, I'm kicking off here. But what I would say, Your Honors, is that this is a case where the defendant bears the burden on plain error. And I'll speak to all the plain error elements. But let me go right first to the one that you raised first, Judge Ambrose, the miscarriage of justice prong here. The reason why it wouldn't be a miscarriage of justice in this case to let this stand, even if the court found there was error and that it was plain, is in part, and I think Mr. Siegel's wrong, actually. Because when you asked him that, he said the four other circuits have found plain error. Indeed, they have. But, Your Honor, what I'd say is, on the miscarriage of justice point, just to take that first and then to speak to the plain error claimant. Well, I mean, they found all elements of plain error meted. Well, actually, no. I think what Judge Rendell's question was, I may be wrong, but were the other cases of the courts of appeals who dealt with this tolling issue, were they plain error cases? I just want to note that they were not. In every single. Mr. Siegel said three of the four were. I think what Mr. Siegel's talking about, he cites some other supervised release cases that the Third Circuit has dealt with in different contexts. We need a picture to clarify that. But Oso Gallegos, Balogun, the Okaka case, all those cases were not on plain error review. There were objections. Right. Even if they're not plain error, though, if you would, to his point, which is, as a practical matter, if you're dealing with Mr. Cole 20 years from now, it is a hit to the reputation of the court and a waste of the resources of the people of the United States to be dealing with something that, by law, we don't have any right to deal with. Well, I think I'd say three, I'd give three reasons why it's not, Your Honor. I think Mr. Siegel, in his response, suggested that, well, 20 years from now, 15 years from now, whatever it might be, that there would be resources expended on bringing the defendant back into the country before the auspices of the district court, only to have the district court find that it couldn't, in fact, enforce the supervised release term. That's not true, because if the court found that, in its discretion, it wasn't going to find that a miscarriage of justice occurred here, then for this case, that term would stand. How do you get around the Volcker case, which talks about that if you have imposing a sentence not authorized by law, it seriously affects the fairness, integrity, and public reputation of the proceedings? What I would say, Your Honor, is that I think the Volcker case and the other cases that the defendants cited, the Pruden case, the Evans case, they're different than this, in that they're all talking about circumstances. What they really focus on is what is the defendant subject to incarceration, and I think what they're looking at is the day the defendant gets out from prison. But this is part of a sentence, and it's arguably not authorized by law, and Mr. Siegel's got a lot of support for his position. At least one distinguishing point is, Your Honor, is really the contingent possibility that this might occur in the future, and that's different from Volcker, in that in Volcker and Evans and Pruden, the day the defendant's released into the United States, he's subject to the condition, and if he does something to violate the condition on that day, he's subject to the prospect immediately of further incarceration. Well, leave the contingency out. Isn't there something damaging to the reputation of the judicial system of the United States when courts impose unlawful sentences? Your Honor, I think that not in and of itself, I'd say the answer is no, in the sense that I think there are circumstances, and I think that the plain or a line of cases take this into account, that there are some circumstances in which a court may err, may err even with respect to a term of supervised release or to a sentence. But the nature of the error is in part understandable, perhaps, because of, and we'd argue here it is, because of the context of the statute and what the court was thinking in this case. But secondly, that the potential impact, and that's what the courts look at when it comes to the substantial rights prong and the miscarriage of justice prong, that the possibility of an impact is not great enough. Do you have a case, Mr. Burke, where a court has imposed as part of a criminal sentence something that the law does not permit, and where that's been found to be error, but not plain error? Well, I think I could speak in a couple ways, Your Honor. One case is a case that we cite in the brief. It's the Grieco case in the Third Circuit, where the court said that the district court had wrongly sentenced the defendant to two, agreed that the defendant should be convicted of two counts, when the court really should have merged it into one count, but it analyzed what the practical, immediate prejudice was on the defendant as to that, and said that the only practical, immediate prejudice was the payment of an additional special assessment, which didn't amount, wasn't enough, a sufficient impact to amount to that. I'd also note, though, in the context, and I don't cite this in our brief, but I think it's related, and it relates to your question, so I'll just note it for the court. There are a couple other cases where the court has dealt with the issue of, in the supervised release context, a judge has not done something, has not advised the defendant about particular terms of supervised release, and the court, Third Circuit later found there was error, but it said it wasn't substantial. Is that qualitatively different than imposing something that the court had no authority to impose? I'd say it's, I'd acknowledge that it is different in kind, but it's not, I don't think it's, but I think it goes at least to the aspect of, the court's question was, when you're talking about a supervised release term, which is, of course, part of punishment, if the court gets something wrong with respect to that, something that could have affected the defendant, that the court, in fact, says did affect the defendant, the court then looks, it's not enough, it then looks to see in the miscarriage of justice problem, what is the likelihood of the prejudicial impact? Here we say that's remote, because of the things we cite in our briefs. And I think it also looks, it's kind of underscoring it, because it goes to the issue of the effect on the, is it a miscarriage of justice and the effect on the way people look at the court system? I think people would look at this case here, it's an unusual case to begin with because it's in the deportation context, and that's, I think the, obviously there are deportation cases, but in the larger context of supervised release, that's a subcategory, which the statute, I think, deals with a little bit differently. But more than that, I think the public, if it was looking at the case, would say, you had a defendant here who the district court was particularly concerned about, someone whose prior convictions involved shooting a number of times at another man, and stabbing a woman in the back and in the face, and who repeatedly relented. And what the court has authority to do depends upon the facts, and we can't have that, we need to have the rule of law and consistency. Here, if it's ultra vires and outside the authority of the court to do this, doesn't the court then, if it does it, isn't that automatically contrary to our law, which has precedent and consistency? I'd say it's not automatically, Your Honor, because I think it's a fact-intensive inquiry as to the substantial rights and miscarriage of justice promise. I'd say that, for example, a case we cite in our brief is the Dixon case, which was an error in, when a defendant was deciding whether or not to plead guilty, the district court hadn't advised the defendant of the maximum penalties. It's a fact-specific inquiry because what the court was doing is not just looking at the nature of the error, which was significant. I mean, it had to do with, did you know what the real possible impact was facing you at sentencing? But it was also, what happened at the sentencing? What are the facts that relate to what was in this defendant's mind as to when the defendant was deciding to take the plea? Analogizing to here, it's what are the facts surrounding the circumstance and what's the impact? Do you agree that the court had no authority to do this? We don't. What is the authority? I'd say there's three reasons why we'd argue that the court, why it was an error in the first place. Acknowledging here, though, that we're obviously working under the plain error standard. Here's how I would lay them out. First, the statute, we know that Congress has given broad authority to district courts to impose conditions of supervision. But for tolling, when Congress wants to do it, it knows how to do it. 3624E and 3583I. Well, Your Honor, I'd say that, I'd submit that you could read those inclusions in the statute as not an exclusion, that no other condition can relate to a stopping or extending. No, but what I'm saying is when Congress wants to have tolling, it knows how to do it. And it did not specifically do it here as it did in two other cases. Your Honor, I'd say, though, that there are other portions of the statute. I mean, we're doing it in the context of conditions of release. For example, in the statute, Congress specifically knew how to impose specific conditions that thought were important with respect to drug testing, for example. But I think you wouldn't say that a district court wouldn't have the ability to foster additional conditions, if it thought they were appropriate in a particular context of the defendant, that might relate to that same topic or issue. The government's argument here would be similar. Of course, Congress did speak to tolling. Is there any case that supports your position here? I'll concede, Your Honor, I want to say I've seen about, there's only about 10 cases in the country, 10, 12 cases that even deal with this issue, which just doesn't come up that often in the court system, but it comes up enough. I don't know that there's a particular case now that suggests that tolling is appropriate. But what I would say is this, and again, this is in the planar context, you've got, it's a situation, if you're looking at the district court, was it clear to district court this was error? You have no Supreme Court case on point, no Third Circuit case on point. And although the other circuits go the other way, they do go the other way, Your Honor. But the Sixth Circuit for 10 years, in two opinions, said this was legal after considering a lot of the same. And they went in bank and wasn't it unanimous? It was unanimous in bank, I believe. But there were 10 years in many districts. On the Sixth Circuit, that's pretty good. Judge, I can't speak to those judges, but I guess my argument would be this. If you're putting yourself in the position of the district court and you're saying, did the district court clearly error? Was there really no legitimate basis it might have thought that it believed it could do this and the law would support it? I'd say you had a court of appeals that for 10 years said it was okay and district courts did it repeatedly. And you have other district courts who obviously look at the statute and they look at the context of the supervised release statute in general. And they say, we know there's an explicit provision in the statute, in an analogous situation, that if a defendant's incarcerated, if he's not subject to supervision regularly, that the term is told. You could see a district court could say, yeah, yeah, the whole purpose of this statute, it makes sense. It makes sense why, particularly in a case, and district courts don't do this all the time, just in this kind of a case, when you have a defendant who's particularly violent and who's repeatedly, and admitted, I think, at the colloquy that, yeah, I'm likely to come back. I have family here. Here, I don't think you can say that it's plain error for the court to think that it could do that. Doesn't that go back to the point that Judge Rendell was making, though, Mr. Burke, which is if you judge whether or not something is error of any kind, including plain error, based on how bad the criminal is, you're sort of ignoring the law as it stands on its own, which is either as a matter of law, you've got authority to do this, or as a matter of law, you don't have authority to do this. This isn't a sort of a maybe you do, maybe you don't. I mean, you've got to make that call as a matter of law, don't you? And once you've made that call as a matter of law, even if this person is the most heinous criminal of all, they're entitled to the application of the rule of law. Well, Judge, I'd say two things. If you had a statute that said X, and the court clearly did not X, I think it's a much clearer case, if you're violating the explicit terms of a statute. But if, on the other hand, you have a statute that is broad-based in the conditions that you could impose, I think the facts of a particular case matter because the facts of a particular defendant's situation are always going to relate to a court deciding what term or condition of supervised release it's going to impose. And new defendants can bring some new facts to bear. And so if a court's considering this and looking at the statute, maybe even, you know, in this particular context for the first time and thinking, do I have the authority to do this? I should. I'm worried if this guy comes back more than three years from now, people could get killed. People could get stabbed. Then you do have to look at the facts. In light of the statute, if the statute doesn't specifically preclude it, doesn't say not X, Third Circuit hasn't said it's wrong, Supreme Court hasn't said it's wrong, and district courts have, and at least the circuit has for a lot of years, said, yeah, we can understand this is okay. In that case, at least for this case, it should stand. As correct or as error that's not plain? I would say it is not plain error, and that should be the basis of the court's decision in this case. The court doesn't necessarily have to decide whether, in general or in another case, that there is error on de novo review here. I think it would be sufficient for the court to say, in this case, when we're looking at what the district courts did, which is our mandate, because there was no objection below, in this case it should stand. And if Mr. Cole does reenter in the future, there will be the protection the district court wanted, but it's understandable under the plain error review. Were you the counsel at the sentencing? I was. Normally when this, maybe just sort of, you haven't thought about it at the time, but when this comes up, were you aware that there were a number of circuits that went the other way on the tolling? I wasn't, candidly, Your Honor, but, and actually I think this is instructive, it's not the first time, it doesn't happen regularly in our district, but occasionally district courts have, and in my sentencings too, had imposed similar conditions, a tolling condition in effect, when there was a real significant issue with respect to the defendant's violent behavior. And, I mean, immediately my first thought was, yeah, that makes sense. And then when I took a look at the cases, obviously there are circuit courts going the other way, but you also see some courts that have. If you didn't know about it, I can understand, obviously. I did not, and I would have at least. It may make some sense, but you have to have the authority. I understand, Your Honor. All right. Unless the court has further questions, I'll rely on our briefs. Thank you. Well done. I would briefly like to respond to three points. First, Judge Rendell made a good point about distinguishing the case law from the other circuits from distinguishing the case law from the Third Circuit. It's the Third Circuit case law that I cited, three cases that deal with the plain error standard. And each of those cases was a supervised release condition. The court found that it exceeded statutory authority. The court found that if the defendant violated this condition, he could go to jail, and therefore the court found that it was plain error. Now, counsel was asked a question by Judge Jordan, are there any cases where they've upheld under a plain error standard something was illegal, but they didn't strike the condition? And my opponent, my colleague cited the Gricko case where there was a special assessment. Special assessments would be a distinguishing factor from the supervised release case law that I cited because the supervised release case law, the person was looking at going to jail as a result of violating the illegal term. In Gricko, the guy got an extra special assessment. The court said it's not important for us to deal with it on plain error review. But in this case, it's distinguishable because the defendant could go to jail. The final point is that, and I think it's a good point that was raised by Judge Ambrose, which is what did counsel know? And I think the critical point here is that if you look at the pre-sentence report, this potential factor wasn't discussed in the text of the pre-sentence report. So the government wasn't on notice in advance of the hearing. Defense counsel was on notice of defense of it. So there was no ability to look in advance and take a look at the treatise. But if you look at the treatise and we cite the treatise, it says you can't do this. Did the judge do this on his own? I suspect that the judge did it in conjunction with the probation office. I can't tell you that I know that. It wasn't referenced in the PSR. It wasn't referenced in the PSR. Well, your statement that this wasn't something that was really considered and thought about and people were arguing or reviewing, does that cut against your argument in one sense? Because if there's no Third Circuit opinion and no Supreme Court opinion that says you can't do this, then you're thinking logically, how can I disincent a dangerous person from coming back? Even if it's error, if there's nothing out there saying you can't do that that's binding authority, what makes it plain? I think it cuts the other way. The fact that it wasn't in the pre-sentence report means that this is a little bit unlike the normal plain error case where there's something that happens during the course of trial and you expect the attorney to get up and object because it's something that they know about. Your expectation at a sentencing hearing is that all the issues are going to be laid out in the pre-sentence report and you do your research before you get to the hearing. So the fact that it wasn't in the pre-sentence report brings us closer to the sort of a case where there would be an exception to the rule that you have to preserve your objection because it's unreasonable to expect them to do it on such a short notice. It's still a plain error case, but what I'm saying is the counsel for both sides, and I'm sure the judge, everybody acted in good faith. But if you go beyond the statute, somebody has to say you've gone beyond the statute so that the other district court judges will be guided. Thank you.